1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Health Industry Business Communications          No. CV-19-05088-PHX-MTL
   Council Incorporated,

10               Plaintiff,                         **ORDER**

11  v.

12  Animal Health Institute, et al.,

13               Defendants.

14

15         Before the Court is the motion to dismiss filed by Defendants Animal Health

16  Institute ("AHI") and DXC Technology Services LLC ("DXC") (collectively,

17  "Defendants"). (Doc. 20.) Defendants move to dismiss all twelve of Plaintiff's claims. As

18  discussed herein, the motion is granted in part and denied in part.

19  **I.    BACKGROUND**

20        **A.    Plaintiff and the HIN System Database**

21         Plaintiff Health Industry Business Communications Council Incorporated

22  ("HIBCC" or "Plaintiff") is a "non-profit standards development organization that

23  develops and administers the preeminent auto-identification and data transfer standards

24  used in the healthcare industry." (Doc. 1 ¶ 8.) This includes its "proprietary" Health

25  Industry Number ("HIN") System Database. Plaintiff developed the HIN System Database

26  in the 1980s because the previous process for procuring materials in the healthcare industry

27  was a "highly complicated activity." (*Id.* ¶¶ 8, 9.) HIN System Database users include drug

28  and medical device manufacturers, distributors, hospitals, clinics, group purchasing

entities, and medical provider offices. (*Id*. ¶ 11.) The HIN System Database is a "centrally administered, carefully maintained database of unique identifiers"—the HINs. (*Id*. ¶ 12.)

Each HIN is a "creative 9-digit alphanumeric character" with three components:

> the first six characters of the identifier comprise the "base HIN" which identifies a healthcare entity at a particular location, the seventh character is a check digit for verifying the accuracy of the first six characters, and the last two characters are a suffix that uniquely identify a specific ship-to location, alternative location, or functional affiliation within the particular healthcare entity.

(*Id*. ¶ 13.) Each HIN "provides a unique and compressed way of identifying trading partners with ease." (*Id*.) Plaintiff receives approximately 175,000 requests for HIN assignments each year. (*Id*. at 5 ¶ 15.) Prior to the actions giving rise to this lawsuit, Plaintiff asserts that the HIN System database was the only nine-digit alphanumeric identifier for trading partners. (*Id*. ¶ 19.) Plaintiff has obtained two registered HIN trademarks, an unregistered mark, and "numerous copyrights." (*Id*. ¶¶ 23, 30.)

## B. AHI and DXC

AHI is a trade association for animal medicine manufacturers in the veterinary health industry. It is the central authority and governing body for the "AHI-EDI Special Project" (the "Animal Health Institute, Electronic Data Interchange Special Project") and the AHI-EDI Council. AHI-EDI Special Project members include manufacturers, vendors, and distributors dealing in animal medications, health devices, or other animal-related products. (*Id*. ¶¶ 37-39.)

On February 2, 1996, Plaintiff and AHI entered into an agreement (the "AHI Agreement") for AHI-EDI Special Project members to license a portion of the HIN System Database "relating to animal health trading partners" (hereinafter the "HIN System Animal Health Database"). (*Id*. ¶¶ 41, 42.) Pursuant to the AHI Agreement, Plaintiff also created a separate "Producer File" subset of the HIN System Animal Health Database for entities "primarily engaged in the keeping, grazing, or feeding of livestock for the sale of livestock or livestock products (including serums)." (*Id*. ¶ 46.)

DXT is an information technology software company. Plaintiff asserts that DXC has had a separate contract with AHI to administer the AHI-EDI Special Project since 1995. As such, the AHI Agreement required Plaintiff to provide DXC with access to the HIN System Animal Health Database. In this way, DXC served as an "IT intermediary" between Plaintiff and AHI. (*Id*. ¶¶ 50-53.) On February 19, 1996, DXC[1] also entered into a HIN System Data License Use Agreement with Plaintiff (the "DXC Agreement").

### C.    Defendants' Alleged Misconduct

From 1996 through January 2019, Plaintiff "regularly" received requests for HIN identifiers from AHI-EDI participants. (*Id*. ¶ 59.) AHI-EDI participants are a "significant portion" of Plaintiff's customer base. (*Id*. ¶ 62.) Plaintiff alleges that, beginning in late 2018, Defendants knowingly misled Plaintiff while it "intentionally, knowingly, improperly coerced, induced, and/or diverted" AHI-EDI participants by creating a new and competing identification system. Defendants termed the new system the "AHN" ("Animal Health Number") system.

Specifically, Plaintiff alleges that by no later than November 2018, Defendants had "conspired and collaborated" to improperly use Plaintiff's property, including the HIN System Animal Health Database, the Producer File, and the HINs themselves, to create a new and competing identifier that is "structurally identical" to the HIN identifier. The new system also contains a records database copied from the HIN System Animal Health Database. (*Id*. ¶¶ 72-73.) Plaintiff also alleges that when AHI-EDI participants requested new HIN identifier assignments during this period, Defendants withheld those requests from Plaintiff and provided them with AHN identifiers instead. (*Id*. ¶ 76.) Plaintiff asserts that it began to receive complaints from confused customers in March 2019. (*Id*. at ¶¶ 92-94.) It also states that Defendants have created the false impression that Plaintiff "endorses, sponsors, is affiliated with or otherwise connected with" Defendants and the AHN system. (*Id*. ¶¶ 96-99; 104-105.)

On May 10, 2019, AHI notified Plaintiff that the AHI-EDI Project "decided to

---

[1] Plaintiff states that DXC was at that time named PDA Inc. (Doc. 1 ¶ 54.)

terminate HIBCC's services" effective July 1, 2019. (*Id.* ¶ 109.) Plaintiff states that Defendant informed AHI-EDI participants, without authority and incorrectly, that Plaintiff would continue to provide HIN identifiers and access to the HIN System Database through the end of 2019. (*Id.* ¶ 111.) Plaintiff states that Defendants "made these statements to encourage customers to adopt and/or try the AHN system, thinking they would still be able to hold on to their HIN identifiers" and to access Plaintiff's database for the rest of the year. (*Id.* ¶ 113.) Plaintiff asserts that Defendants have acted knowingly and willingly, and that because of their actions, Plaintiff "has lost and will further lose" its customers. (*Id.* ¶¶ 133-135.)

### D.   Procedural History

Plaintiff filed the Complaint against AHI and DXC on September 4, 2019. (Doc. 1.) It asserts claims for trade dress infringement, trademark infringement and unfair competition, and false advertising under the Lanham Act; unfair competition, trademark infringement, breach of contract, tortious interference with contractual relationships, tortious interference with prospective relationships, civil conspiracy, and breach of the implied covenant of good faith and fair dealing under Arizona law; copyright infringement under the Copyright Act; and seeks a permanent injunction. Defendants filed the pending motion on November 27, 2019. (Doc. 20.) Plaintiff filed a response on January 22, 2020. (Doc. 24.) Defendants filed a reply on January 31, 2020. (Doc. 27.) Oral argument was held on August 24, 2020.

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be

dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

The Court must accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581.

## III.   ANALYSIS

Defendants argue eight independent grounds for dismissal which, combined, would dismiss all twelve of Plaintiff's claims. The Court will address Defendants' arguments in turn. Ultimately, the Court will dismiss, without prejudice, Plaintiff's claims for tortious interference with contractual relationships (Count VII) and breach of the implied covenant of good faith and fair dealing (Count X).

### A.   Trade Dress

Defendants first move to dismiss Plaintiff's claim for trade dress infringement (Count I). The Lanham Act prohibits any person from using another's trade dress in commerce in connection with any goods or services. 15 U.S.C. § 1125(a). Trade dress refers generally to the total image, design, and appearance of a product and "may include features such as size, shape, color, color combinations, texture or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993). To properly state a claim for trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must allege facts showing (1) non-functionality, (2) secondary meaning,[2] and (3) a likelihood of confusion. *Clicks Billiards, Inc. v. Sixshooters, Inc*., 251 F.3d 1252, 1258 (9th Cir. 2001). Defendants

---

[2] A party can also meet this standard by alleging that the trade dress is "inherently distinctive" without acquiring secondary meaning. *Clicks Billiards, Inc.*, 251 F.3d at 1258. Here, Plaintiff has not alleged that its trade dress is inherently distinctive, only that it has acquired secondary meaning.

argue that Plaintiff has failed to "specifically identify" its trade dress, and that it has also not alleged any prong of the three-part test. (Doc. 20 at 3.) Plaintiff responds that the Complaint explicitly defines its trade dress and that it has alleged facts showing all three elements. The Court agrees with Plaintiff.

### 1.      Identification of Trade Dress

As an initial matter, Defendants argue that Plaintiff has not articulated its alleged trade dress because it does not "specifically identify what elements of the HIN warrant protection." (Doc. 20 at 3.) A plaintiff should "clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (citations omitted). The Complaint states that Plaintiff's trade dress is its "9-digit alphanumeric identifier for trading partners in the healthcare industry, including the animal health industry." (Doc. 1 ¶ 137.) As Plaintiff notes, "complexity is not the standard" in this context. (Doc. 24 at 4.) The Court finds that Plaintiff has provided more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and that Defendants have sufficient notice of the nature of Plaintiff's alleged trade dress. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555 (2007)).

### 2.      Non-Functionality

The next issue is whether Plaintiff has adequately alleged non-functionality. "Trade dress protection extends only to design features that are nonfunctional." *Clicks Billiards, Inc.*, 251 F.3d at 1258. A feature is functional "if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). Multiple functional items may be combined into a non-functional aesthetic whole. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987). Functionality is a question of fact. *Id.* at 843.

Defendants argue that, based on the facts alleged, "HINs are merely functional." (Doc. 20 at 4.) Defendants state that "each HIN does nothing more than convey information, and that is the result of simply combining two pieces of identifying information." (*Id*.) Further, Defendants argue that Plaintiff concedes that HINs are functional by identifying trading partners in a "compressed" way. (*Id*.) Defendants also argue that the fact that an identifier "could be developed to comprise any number of digits is inconsequential." (*Id*.)

Plaintiff responds that the Complaint adequately alleges that the HINs are non-functional. It states, for example, that "the fact that the HIN is nine digits in length, as opposed to more or fewer digits in length, was a creative design choice made by HIBCC and serves no independent functional purpose." (Doc. 1 ¶ 13.) It also states that the three portions of the HIN "result in creatively-composed text identifier that provides a unique and compressed way of identifying trading partners with ease." (*Id*.) Plaintiff also notes that although individual components of the HIN have functionality, the result is, as a whole, non-functional. *See Fuddruckers, Inc*., 826 F.2d at 842. Plaintiff analogizes an HIN to a Coca-Cola bottle in this sense: "[i]ndividual aspects of a Coca-Cola bottle have functionality—to hold the beverage, to fit easily in the drinker's hand—but the exact curvy shape of the bottle serves no function whatsoever and is protectable trade dress." (Doc. 24 at 5-6.)

Functionality is "typically a fact-intensive inquiry." *Century Int'l Arms Inc. v. XTech Tactical LLC*, No. CV-18-03404-PHX-GMS, 2019 WL 2269392, at *2 (D. Ariz. May 28, 2019). For this reason, "some courts have held that it is improper to resolve the issue at the motion to dismiss stage." *Id*.; *see also SCG Characters LLC v. Telebrans Corp.*, 2015 WL 4624200 at *7 (C.D. Cal 2015) ("Because, ordinarily, the functionality inquiry is heavily fact-intensive, courts have held that this issue cannot be resolved at the motion to dismiss stage."). This Court agrees that, in this case, functionality should not be determined on a motion to dismiss. Taking the allegations in the Complaint as true, Plaintiff has adequately alleged that HINs are non-functional.

The Court notes that it is not persuaded by Defendants' citation to *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276 (3d Cir. 2004). In that case the Third Circuit, en banc, held that the plaintiff's nine-digit identification numbers were not copyrightable because the product numbers were not "original," but instead were "mechanically produced by the inflexible rules" of the plaintiff's system. *Id.* at 285. In reaching this conclusion, the court stated that the "numbers are purely functional." *Id.* at 284. As Plaintiff notes, this assertion was in the context of determining whether the numbers at issue were *copyrightable*, not protectable trade dress. (Doc. 24 at 6.) Further, the matter was on appeal from a motion for summary judgment ruling, not a motion to dismiss. The Court will not dismiss the trade dress claim on non-functionality grounds.

### 3.  Secondary Meaning

Defendants also allege that Plaintiff has not alleged secondary meaning. Secondary meaning is a "term of art for identification of source." *Clicks Billiards, Inc.*, 251 F.3d at 1262. Trade dress attains secondary meaning "when the purchasing public associates the dress with a particular source." *Fuddruckers,* 826 F.2d at 843. It requires a showing that there is a "mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) (internal quotations and citations omitted). Whether a product has acquired secondary meaning is also a question of fact. *First Brands,* 809 F.2d at 1383. Defendants state that Plaintiff makes only "conclusory allegations" about trade dress. (Doc. 20 at 5.) Plaintiff responds that it has adequately alleged secondary meaning. The Court agrees with Plaintiff.

The Complaint states that "[a]s a result of [Plaintiff's] continuous, widespread, and exclusive use of a 9-digit alphanumeric identifier for healthcare trading partners for over thirty years, . . . customers have come to associate any 9-digit alphanumeric identifier of a trading partner in the healthcare supply chain as being an identifier generated by [Plaintiff]." (Doc. 1 ¶ 21.) Plaintiff also alleges that it has received complaints from confused customers and has attached examples to the Complaint as exhibits. (Doc. 1 ¶ 91;

Docs. 1-11, 1-12.) These allegations are sufficient to allege secondary meaning at the motion to dismiss stage. *See Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV150246DOCDFMX, 2016 WL 6138416, at *6 (C.D. Cal. May 6, 2016) ("Further inquiry into whether consumers actually associate [defendant's] trade dress with [defendant] is 'a question of fact' more appropriately addressed at a later stage in litigation.").

The Court notes that this case is distinguishable from *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929 (C.D. Cal. May 8, 2015), cited by Defendants. In that case, the court found that the plaintiff did not adequately plead secondary meaning because the complaint "never alleges that when consumers see an item of footwear exhibiting the Bailey Button Boot Trade Dress, they associate the item with Plaintiff. . . [T]he key factual assertion for secondary meaning is not the association of the plaintiff with high-quality goods generally, but the association of the plaintiff with a particular good or goods." *Id.* at *5. In the present case, however, Plaintiff does assert that customers "associate any 9-digit alphanumeric identifier of a trading partner in the healthcare supply chain" with Plaintiff. (Doc. 1 at 6 ¶ 21.) Plaintiff has therefore alleged that its HINs have achieved secondary meaning for the purposes of a motion to dismiss.

### 4.    Likelihood of Confusion

The final issue with respect to trade dress is whether Plaintiff has adequately alleged a likelihood of confusion. "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fuddruckers,* 826 F.2d at 845 (internal quotation marks omitted). To plead likelihood of confusion, Plaintiff must allege facts that demonstrate that "customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *See Clicks Billiards*, 251 F.3d at 1265. "The Ninth Circuit has identified eight factors ('the *Sleekcraft* factors') to help guide the

analysis to determine whether such confusion is likely: (1) the similarity of the mark(s) or trade dress, (2) the strength of the mark(s) or trade dress, (3) evidence of actual confusion, (4) the proximity or relatedness of the goods, (5) the degree to which the marketing channels used for the goods converge, (6) the type of goods and the degree of care likely to be exercised by the purchasers, (7) the defendant's intent in selecting the mark or trade dress, and (8) the likelihood of expansion of the product lines." *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1177–78 (C.D. Cal. 2010) (*citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)).

Defendants address five of the *Sleekcraft* factors. They argue that, in sum, Plaintiff has "failed to plead any plausible facts that would allow the Court to find that it is 'probable' a reasonably prudent customer would be confused by the 'trade dress' of HINs." (Doc. 20 at 7.) The Court is not convinced by Defendants' arguments. As Plaintiff notes, the Complaint alleges facts concerning several of the *Sleekcraft* factors, including evidence of actual confusion. (Doc 1. ¶¶ 91–95; Doc. 24 at 9.) *See Mastro's Restaurants LLC v. Dominick Grp. LLC*, No. CV 11-1996-PHX-PGR, 2012 WL 2091535, at *5 (D. Ariz. June 11, 2012) ("Generally, actual confusion is the best evidence of likelihood of confusion.").[3] Further, Plaintiff alleges the similarity of the marks (e.g., "Defendants intentionally and jointly copied HIBCC's valuable trade dress in its 9-digit alphanumeric HIN identifier") and Defendants' alleged intent (e.g., "Defendants intentionally and jointly copied HIBCC's valuable trade dress in its 9-digit alphanumeric HIN identifier with the intent to mislead and/or cause confusion about the origin, sponsorship, or approval of the AHN identifiers[.]"). Based on these allegations, and "because likelihood of confusion is an intensely factual question, consisting of all of the factual elements identified above," the court declines to dismiss at this time. *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, No. 518CV2436DDPKKX, 2019 WL 1260634, at *5 (C.D. Cal. Mar. 18, 2019).

---

[3] The Court is specifically not convinced by Defendants' arguments that Plaintiff has provided factual allegations that only two out of 259 AHI-EDI participants have expressed any confusion. (Doc. 20 at 6.) A "plaintiff is not required to prove the likelihood of confusion at the pleading stage." *See Mastro's*, 2012 WL 2091535, at *5 (citation omitted).

**B.     Fair Use**

Defendants argue that the doctrine of nominative fair use bars Plaintiff's claims for trademark infringement/unfair competition and false advertising under the Lanham Act, as well as for common law trademark infringement (Counts II, III, and V). (Doc. 20 at 7.) The Ninth Circuit recognizes two distinct fair use defenses: classic fair use and nominative fair use. *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1150 (9th Cir. 2002). The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's goal is to describe its own product. *Id*. To establish a nominative fair use defense, a defendant must prove the following three elements:

> First, the [plaintiff's] product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the [plaintiff's] product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

Defendants argue that the Complaint does not state that Defendants' use of its marks falls outside of nominative fair use, and that they have satisfied the three-part test. As such, they argue that nominative fair use bars Plaintiff's claim for trademark infringement and unfair competition (Count II) and false advertising (Count III) under the Lanham Act. And, because the claim for common law trademark infringement is "'essentially the same' as its claims brought under the Lanham Act, the same analysis applies" and also bars Count V. (Doc. 20 at 8) (citing *BMW North America, LLC v. Mini Works, LLC*, 2010 WL 11484171 at *9 (D. Ariz. Sept. 27, 2010)).

Although Defendants are correct that a court may determine nominative fair use on a motion to dismiss, that is a "rare situation." *Williams v. Gerber Prod. Co*., 552 F.3d 934, 939 (9th Cir. 2008). In *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019), cited by Defendants, the Ninth Circuit upheld the district court's dismissal because

"on the face of the complaint, it was clear that Defendants' alleged infringement constituted nominative fair use." *Id.* at 897. The Court is not convinced that the same is true here. The Complaint alleges, for example, that Defendants' "Technical Bulletin" states that "the AHI-EDI website has been fully converted from the HIN to the AHN." (Doc. 1 ¶¶ 96, 99; Doc. 24 at 9.) It also states that AHI's website uses Plaintiff's marks as "hyperlinks to pages describing Defendants' AHN identifier[.]" (Doc. 24 at 10.) At a minimum, these allegations prevent dismissal on nominative fair use grounds because, taken as true, it is not evident that Defendants have done "nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block*, 971 F.2d at 308. The Court will accordingly not dismiss Counts II, III, or V on nominative fair use grounds.

## C.      Preemption of Unfair Competition Claim

Defendants argue that federal law largely preempts Plaintiff's unfair competition claim (Count IV), and that otherwise, the claim is not properly pled. (Doc. 20 at 10.) In Arizona, the common law doctrine of unfair competition "encompasses several tort theories, such as trademark infringement, false advertising, 'palming off,' and misappropriation." *ACT Grp. Inc. v. Hamlin*, No. CV-12-567-PHX-GMS, 2012 WL 2976724 at *6 (D. Ariz. July 20, 2012) (citing *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 970 P.2d 954, 956 (Ct. App. 1998)). The test for unfair competition is whether the public is likely to be confused. *Doe v. Arizona Hosp. & Healthcare Ass'n*, No. CV07-1292-PHX-SRB, 2009 WL 1423378 at 11 (D. Ariz. Mar. 19, 2009) (citation omitted). Plaintiff states, in part, that without its consent, "Defendants have been and continue to improperly use [Plaintiff's] Marks and trade dress in connection with the sale, distribution, offering for sale, or advertising of goods and/or services, and this use is likely to cause confusion or mistake or to deceive as to the affiliation or sponsorship of such services." (Doc. 1 ¶ 160.)

Defendants argue that "to the extent [Plaintiff's] claim for common law unfair competition is based on trademark infringement, false advertising, or misappropriation

through copyright infringement, the claim is preempted by the Lanham Act and the Copyright Act." (Doc. 20 at 10.) The Court agrees that, to the extent an unfair competition claim is based on misappropriation through copyright infringement, the claim is preempted by the Copyright Act. *See ACT Grp. Inc.*, 2012 WL 2976724, at *8 ("[M]isappropriation claims based on copyright are preempted by federal copyright law."). Plaintiff's unfair competition claim does not reference copyright protections, however. This does not appear to be a relevant consideration.

The Court does not find that Plaintiff's unfair competition claim is preempted by the Lanham Act. Defendant cites *ThermoLife International LLC v. American Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988 (D. Ariz. Aug. 15, 2019), in which this court noted that "claims of unfair competition and false advertising under state statutory and common law are 'substantially congruent' to claims made under the Lanham Act." *Id.* at *9. The Court does not agree that this means the federal claims *preempts* the state law claim. In fact, numerous courts have analyzed these types of claims together. *See, e.g.*, *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, No. CV-16-04538-PHX-DGC, 2017 WL 4284570, at *2 (D. Ariz. Sept. 27, 2017) ("Plaintiff's trademark infringement and unfair competition claims brought under the common law and the Lanham Act, 15 U.S.C §§ 1114 and 1125, can be considered together because they share the same analysis. Likewise, the state law claims under A.R.S. §§ 44-1451 and 14-1522 are essentially the same as the federal Lanham Act claims."); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182–83 (N.D. Cal. 2007) (granting summary judgment on Lanham Act and state law unfair competition claims because they are "substantially congruent"). Defendants appear to acknowledge this in their reply, stating that even if the Lanham Act does not preempt Plaintiff's unfair competition claim, the claim is still not supported because Plaintiff has failed to state a claim under the Lanham Act. (Doc. 27 at 7-13.) But for the reasons discussed above, the Court will not dismiss Plaintiff's Lanham Act claims (Counts I, II, or III) at this time.

Defendants also argue that, although unfair competition claims based on "palming

off" are not preempted,[4] Plaintiff did not properly plead this allegation. "Palming off," or "passing off," consists of a "false representation tending to induce buyers to believe that the defendant's product is that of the plaintiff." *ACT Grp. Inc.*, 2012 WL 2976724, at *6 (citation omitted). The typical "palming off" case consists of "an attempt to make the purchaser believe that the product of the subsequent entrant is that of his better known competitor." *Id.* (citation omitted). Defendants argue that this claim fails because Plaintiff "does not allege any sort of 'active misrepresentation' as to the source of AHNs." (Doc. 20 at 10.) Viewing the Complaint in the light most favorable to Plaintiff, the Court does not agree.

Plaintiff attached to the Complaint a webpage titled "AHI Overview" that states, "the project supports the creation of an industry-wide customer database using a standard Health Industry number (AHN) Identifier with updates provided by distributors, manufacturers, and the Health Industry Business Communication Council (HIBCC)." (Doc. 1-15 at 2.) Plaintiff has also produced evidence of actual customer confusion. (Doc. 1 ¶¶ 93-95.) The Court concludes that Plaintiff has adequately alleged that Defendants attempted to "palm off" its AHNs as approved or supported by Plaintiff. The Court will not dismiss Count IV.

### D.  Preemption of Breach of Contract Claim

Defendants argue that the Copyright Act preempts Plaintiff's breach of contract claim brought under Arizona law (Count VI). The Copyright Act protects the owner of a copyright from another's unauthorized display, performance, reproduction, or distribution of the protected work. 17 U.S.C. § 106. These protections preempt all other legal and equitable rights provided by state common law or statutes. 17 U.S.C. § 301. (Doc. 20 at 11.) The Ninth Circuit employs a two-part test to determine whether a state law is preempted by the Copyright Act. "First, we decide whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming it does, we determine whether the rights asserted under state law

---

[4] *See, e.g., Fairway Constructors, Inc.*, 193 Ariz. at 124 ("A properly stated "palming off" claim is not preempted by federal law.").

are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation and quotations omitted). Defendants claim that both parts of the test are met.

The Court finds that the first part of the test is satisfied. The Complaint states that under the DXC Agreement, the HIN System Animal Health Database is Plaintiff's "sole property" and "valuable copyrighted and proprietary information." (Doc. 1 ¶ 181.) Plaintiff also alleges that Defendants breached their respective agreements by "using the HIN System Animal Health Database, the HIN identifiers, and the HIN guidelines, to create, distribute, promote, advertise, launch, instruct on, and otherwise utilize the AHN system and database, including AHN identifiers." (*Id*. ¶ 184.) In this sense, Plaintiff's breach of contract claim "falls within" the subject matter of copyright because the unauthorized use, reproduction, and distribution of copyrighted material fall within the scope of 17 U.S.C. § 106(1)-(3).

The Court does not find that the second preemption element is met. To survive preemption, the state claim "must protect rights which are qualitatively different from the copyright rights. The state claim must have an 'extra element' which changes the nature of the action." *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987). (citation omitted). A breach of contract claim is preempted "when the contract in question only promises to protect the right to reproduce the work of the plaintiff." *Giddings v. Vison House Prod., Inc.*, No. CV05-2963-PHX-MHM, 2007 WL 2274800, at *2 (D. Ariz. Aug. 7, 2007) (citing *Groso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004)). The "majority of courts have found that breach of contract claims are not preempted because the rights asserted in those claims were not equivalent to rights that could have been asserted in copyright." *Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.*, 177 F. Supp. 2d 1050, 1058 (C.D. Cal. 2001). This Court agrees.

Here, for example, Plaintiff cites a provision in the DXC Agreement stating that DXC "agree[d] to talk [a]ll steps necessary to maintain the confidentiality of the

information contained on the [HIN System Animal Health Database]," and alleges that DXC breached that provision. (Doc. 1 ¶¶ 55, 182.) Plaintiff further alleges that under the AHI Agreement, AHI received a license to the HIN System Animal Health Database "for the limited purpose of facilitating assignment of HIN identifiers within the AHI-EDI project." (Doc. 1 ¶ 183.) Plaintiff further alleges that Defendants breached this agreement by using the HIN materials to "create, advertise, launch, instruct on, and otherwise utilize the AHN system and database, including AHN identifiers." (*Id*. at ¶ 184.) Taking these allegations as true, the Court finds that the alleged contractual terms go beyond a "promise not to accept the benefit of a copyright work" and provide the requisite "extra element." *Chesler/Perlmutter Prods., Inc.*, 177 F. Supp. 2d at 1059. The Court will not dismiss the breach of contract claim (Count VI).

### E.   Tortious Interference

Defendants argue that Plaintiff failed to state a claim for tortious interference (Counts VII and VIII). (Doc. 20 at 12.) Plaintiff alleges one claim for tortious interference with contractual relationships (Count VII) and one claim for tortious interference with prospective relationships (Count VIII). To state a prima facie case of tortious interference with contractual relationships under Arizona law, a plaintiff must allege: "(1) the existence of a valid contractual relationship; (2) [defendant's] knowledge of the relationship; (3) [defendant's] intentional interference in inducing or causing the breach; (4) the impropriety of [defendant's] interference; and (5) resulting damages." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 955 (9th Cir. 2010). Tortious interference with contract "requires, among other things, a contract between the plaintiff and a third party." *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 464 (D. Ariz. 1996). The Court agrees with Defendants that Plaintiff's claim for tortious interference with contract fails because Plaintiff has not alleged that the AHI-EDI participants (or other third parties) breached any agreement with Plaintiff. (Doc. 20 at 12.) Plaintiff's claim for tortious interference with contractual relationships (Count VII) will be dismissed. Because it is possible that Plaintiff could allege facts from which the Court could plausibly infer that Defendants committed tortious

interference with contractual relationships, the Court will grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

Plaintiff also alleges a claim for tortious interference with prospective relationships (Count VIII). The claims are "virtually identical," except that Count VIII requires "the existence of a valid business expectancy," rather than a valid contractual relationship. *Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1130 (D. Ariz. 2017), aff'd, 769 F. App'x 408 (9th Cir. 2019). Plaintiff states that Defendants intentionally interfered with Plaintiff's "prospective relationships with its AHI-EDI customers and with other animal health consumers." (Doc. 1 ¶ 208.) Defendants argue that this claim fails because Plaintiff "has failed to plead how Defendants' conduct was improper as to motive or means"—that is, the fourth element of the prima facie case. (Doc. 20 at 12); *MDY Indus., LLC*, 629 F.3d at 955.

The Court is not convinced by this argument. Plaintiff alleges that it "depends on" the identified prospective relationships "for the enhancement and growth of its business and reputation, and for the continued structural integrity of its nationally standardized HIN System Database," and that Defendants were aware of these prospective relationships. (Doc. 1 ¶¶ 204-05.) Plaintiff also argues that notwithstanding that knowledge, Defendants "intentionally, willfully, maliciously, and without authorization or justification," interfered with the prospective relationships. (*Id*. ¶ 207.) The Complaint also states that Defendants' interference was "based on improper motive" and that they "knew or should have known that by engaging in these wrongful actions, they would adversely affect [Plaintiff's] prospective relationships." (*Id*. at 36 209-210.) Taken together, Plaintiff has adequately stated a claim for tortious interference with prospective relationships. The motion to dismiss Count VIII will be denied.

### F.   Civil Conspiracy

Defendants argue that Plaintiff failed to state a claim for civil conspiracy (Count IX). (Doc. 20 at 13.) The Complaint states that Defendants "entered into a conspiracy to injure [Plaintiff] and benefit Defendants at [Plaintiff's] expense." (Doc. 1 ¶ 218.) Under

Arizona law, civil conspiracy requires that "two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (citation omitted). A civil conspiracy is not an independent tort, but rather "requires an underlying tort which the alleged conspirators agreed to commit." *Baker ex rel. Hall Brake Supply, Inc v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 545 (Ct. App. 2000).

The Court agrees with Defendants that a civil conspiracy claim cannot be "based on an allegation that defendants conspired to violate the Lanham Act because under Arizona law, a claim of civil conspiracy must be based on an underlying tort, and a claim under the Lanham Act is not a tort." *BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2014 WL 268644, at *11 (D. Ariz. Jan. 24, 2014) (cleaned up). Accordingly, Counts I, II, and II are not a proper basis for a civil conspiracy claim. The Court also agrees that a civil conspiracy claim cannot be based on a breach of contract claim, and thus the civil conspiracy claim cannot be based on Count VI.[5] Because the Court is dismissing Plaintiff's claim for tortious interference with contractual relationships, *see supra*, this claim is also not a proper ground for a civil conspiracy claim. However, Plaintiff's claim for tortious interference with prospective relationships (Count VIII) is an adequate basis for the civil conspiracy claim. *See Your Town Yellow Pages, LLC v. Liberty Press, LLC*, No. 409CV00642TUCRCC, 2010 WL 11459928, at *2 (D. Ariz. Feb. 24, 2010) ("[B]ecause Plaintiffs have fulfilled the specificity requirements as to the . . . tortious interference claims, they need not allege additional facts in support of their civil conspiracy claim.").[6] The motion to dismiss the civil conspiracy claim (Count IX) is, accordingly, denied.

### G.    Implied Covenant of Good Faith and Fair Dealing

Seventh, Defendants move to dismiss Plaintiff's claim for breach of the implied

---

[5] A breach of the duty of good faith and fair dealing (Count X) is also not a tort upon which a civil conspiracy claim can be brought (Doc. 20 at 14), although, as discussed below, the Court will dismiss this claim without prejudice.

[6] As Plaintiff does not argue that the civil conspiracy claim is based on any additional underlying claims (Doc. 24 at 15), the Court need not address Defendants' remaining arguments.

covenant of good faith and fair dealing (Count X). (Doc. 20 at 14.) The duty of good faith and fair dealing is implied in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id*. A claim for breach of the duty of good faith and fair dealing requires a contractual relationship. Defendants do not dispute that contracts exist between them and Plaintiff. Defendant argues, however, that the claim fails because Plaintiff has not alleged that Defendants prevented it from receiving the benefits of their agreements. Specifically, Defendants state that they "did not agree to refrain from creating a competing identification system. Moreover, the Agreements did not obligate Defendants to license the HIN System in perpetuity." (Doc. 20 at 15.)

Plaintiff first argues that because it has stated a claim for breach of contract, it has also stated a claim for breach of good faith and fair dealing. (Doc. 24 at 16) (citing *Adonia Holding GmbH v. Adonia Organics LLC*, No. CV-14-01223-PHX-GMS, 2014 WL 7178389, at *4 (D. Ariz. Dec. 16, 2014)). The Court does not agree, because "a breach of contract does not necessarily constitute a breach of the implied covenant of good faith and fair dealing." *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 986 (D. Ariz. 2017). *See also Andra Grp. LP v. JDA Software Grp. Inc.*, No. CV-13-02528-PHX-SRB, 2014 WL 12672630, at *2 (D. Ariz. Aug. 21, 2014) ("Defendant has failed to state a counterclaim for breach of the implied covenant of good faith and fair dealing but has pled sufficient facts to state a counterclaim for breach of contract.").

The Court also finds that, at this point, Plaintiff has failed to allege sufficient facts in support of this claim. The Complaint states that Defendants owe Plaintiff an implied duty of good faith and fair dealing, that Defendants were therefore "prohibited from doing anything to prevent [Plaintiff] from receiving the benefits of the agreements and business dealings," and that "[a]s set forth hereinabove, Defendants' actions prevented [Plaintiff] from receiving the benefits and entitlements of their respective agreements." (Doc. 1 ¶¶ 223-226.) Plaintiff alleges "no non-conclusory facts" supporting a breach of the duty of

good faith and fair dealing. *Republic Servs. Procurement Inc. v. TrueBlue Inc*., No. CV-19-00300-PHX-JJT, 2019 WL 4277043, at *5 (D. Ariz. Sept. 10, 2019). Plaintiff argues in its response that Defendants' actions deprived Plaintiff "of a primary benefit of its contracts with Defendants, namely keeping and building its customer base." (Doc. 24 at 16.) Plaintiff does not cite any particular contractual terms in support of this argument, however, and "the implied covenant of good faith and fair dealing ensures that parties do not frustrate already-existing contract terms; it does not create new ones." *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *5 (D. Ariz. Dec. 20, 2017) (citation omitted). The Court therefore finds that Plaintiff has not stated a claim for breach of the duty of good faith and fair dealing at this time. The claim is dismissed without prejudice.

### H.    Copyright Infringement

Defendants argue that Plaintiff failed to state a claim for copyright infringement under the Copyright Act, 17 U.S.C. §§ 106 and 501(Count XI). (Doc. 20 at 15.) To succeed on a claim for copyright infringement, a plaintiff must demonstrate "(1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp*., 927 F.2d 440, 442 (9th Cir. 1991). The Complaint states that Plaintiff "is the owner of all right, title and interest in and to numerous copyright registrations including U.S. Copyright Registration Nos. TX-3-470-184 (1992), TX-3-586-416 (1993), TX-4-075-082 (1995), TX-5-522-923 (2001), TX-6-589-387 (2007), and TX-8-748-740 (2019)." (Doc. 1 at 38 ¶ 229.) Plaintiff further states that Defendants "have copied, produced, use, reproduced, prepared derivative works based upon, distributed, and publicly displayed at least the work protected by Reg. No. TX-8-748-740 (2019), if not [Plaintiff's] other copyrighted works, without [Plaintiff's] consent." (*Id*. ¶ 232.)

Defendants claim that Plaintiff's claim "appears to be based on a misunderstanding of the protections afforded by the Copyright Act." (Doc. 20 at 15.) As Defendants note, copyright protection does not extend to "any idea, procedure, process, system, method of

operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Further, a claim must be "original" to be copyrightable. 17 U.S.C. § 102(a). The Supreme Court has stated that to be "original," a work must "possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Defendants argue that Plaintiff has not stated a plausible claim for copyright infringement because its works are "utterly lacking" in creativity.[7] *Id.* at 359. The Court is not convinced by this argument at the motion to dismiss stage.

In *Feist*, the Supreme Court reversed a grant of summary judgment and held that the information contained in telephone directories was not entitled to copyright protection. In so ruling, the court stated that a "factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." *Id.* at 350–51. The court concluded that "the names, towns, and telephone numbers copied by [defendant] were not original to [plaintiff] and therefore were not protected by the copyright in [plaintiff's] combined white and yellow pages directory." *Id.* at 363. The telephone directories were "entirely typical"; the "end product is a garden-variety white pages directory, devoid of even the slightest trace of creativity." *Id.* at 362. Defendants also cite *Southco, Inc.*, 390 F.3d 276, referenced above, in which the Third Circuit, en banc, held that nine-digit identification numbers were not copyrightable because the product numbers were not "original." *Id.* at 285. Defendants argue that in the present case, the HIN System Database is "entitled to no more protection than the phonebook at issue in *Feist* or the hardware identifiers in *Southco*." (Doc. 20 at 17.)

While the Court is mindful of Defendants' arguments, they are not an appropriate

---

[7] At oral argument, DXC's counsel emphasized that the Complaint does not sufficiently describe Plaintiff's copyrighted materials. To the extent that this is a new argument, it was waived by being raised for the first time at oral argument. *See Hullaby v. United States*, No. CR-09-1406-PHX-SRB, 2015 WL 10371497, at *4 (D. Ariz. Nov. 9, 2015) ("[A]rguments raised for the first time at oral argument are waived[.]") (citing *Valentine v. City of Chicago*, 452 F.3d 670, 680 (7th Cir. 2006)).

basis for dismissal at this early stage. First, the parties dispute the scope of the copyrighted work. Defendants' motion focuses on the "HIN System Database, comprised of 9-digit HINs." (*Id*.) Plaintiffs respond that "[w]hether HINs are creative is irrelevant; the asserted registrations are for the HIN System Database, which comprises far more than just the 9-digit HINs." (Doc. 24 at 17.) Second, as the court in *Feist* noted, "the requisite level of creativity is extremely low; even a slight amount will suffice." *Id*. at 345. The "vast majority of works make the grade quite easily." *Id*. Third, the Complaint asserts ownership of allegedly infringed works, and that Defendants have "copied, produced, used, reproduced, prepared derivative works based upon, distributed, and publicly displayed" at least the works protected by Registration No. TX-8-748-740. (Doc. 1. ¶¶ 229-232.) *See Pasillas*, 927 F.2d at 442. For all of these reasons, and viewing the Complaint in the light most favorable to Plaintiff, the Court will not dismiss the copyright infringement claim (Count XI) at this time.[8]

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED granting in part and denying in part** Defendants' Motion to Dismiss the Complaint. (Doc. 20). Plaintiff's claims for tortious interference with contractual relationships (Count VII) and breach of the implied covenant of good faith and fair dealing (Count X) are dismissed without prejudice. The other claims remain.

**IT IS FURTHER ORDERED** allowing Plaintiff 14 days from the issuance of this Order to file an Amended Complaint that conforms with the requirements set forth in this Order.

/ / /

/ / /

/ / /

---

[8] Defendants also argue, in a footnote, that because no claim for underlying relief remains, Plaintiff's claim for a permanent injunction (Count XII) should also be dismissed. (Doc. 20 at 18 n.2.) Given that the Court will not dismiss all of Plaintiff's other claims, and that Defendants argue no other grounds for dismissing Count XII, the Court will not dismiss it.

Dated this 24th day of August, 2020.

Michael T. Liburdi
United States District Judge